## J. D. CLOYD v. THE STATE.

No. 19341.   Delivered January 26, 1938.

The opinion states the case.

*Royston & Rayzor* and *Robt. Eikel, Jr.,* all of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—Conviction for polluting a water course; punishment, a fine of $200.

Appellant was master of the S. S. Bulk Oil, a ship which he had brought up Buffalo Bayou to the City of Houston for the

purpose of receiving a cargo of oil from the Sinclair Refining Company. R. B. Thacker, an employee of the refining company, boarded the ship for the purpose of asking appellant when he was ready for the loading to begin. In the course of the conversation appellant stated to him that he was going to instruct the engineer to "pump the after deep tank out." The refining company maintained a ballast line on the dock which was used to receive oil or water when discharged from ships located at the dock in question. At this juncture we quote from the testimony of State's witness Thacker as follows:

"When an engineer is going to pump anything overboard they generally call for the ballast line, and when the captain (referring to appellant) said he was going to have his after deep tank pumped I started down to the dock for the ballast line, and noticed he had a stream of oil coming out of what we call the bilge line. I went back on the ship and requested the captain to stop it, which he did immediately, but of course, there was some oil spread on the water. That all took place in perhaps ten minutes. There was right about thirty five feet necessary for me to climb down. When I got down to the bottom I noticed oil coming out, and I climbed back up. It was five or ten minutes during that time that a small stream of oil, probably an inch in diameter, was pumped."

It appears that the after back tank was a tank in which water or some other substance was used to keep the vessel on an even keel. While the bilge—from which ran a pipe called the bilge line—was in the bottom of the vessel. In short, it appears that the bilge and ballast tanks were located in different parts of the vessel.

Appellant testified that he had no knowledge that anything was being pumped overboard until Mr. Thacker informed him of such fact. He said: "I spoke to the mate and told him to see the engineer and if he was putting anything over the side to stop it." As to the "after back tank" appellant testified as follows: "There was ballast water in the after back tank that had been in there for several voyages. That water had been in there because I couldn't help myself. We ordinarily carry bunker oil in that tank, but the bunker oil was last carried in that tank about the middle of voyage two. The occurrence on May 5th, was voyage five, which lasted approximately twenty days. The tank was washed out, cleaned out, with hot water and pumped out at sea. After it was cleaned out I didn't put any water in there, it leaked in it. I was carrying the water in there as ballast because I couldn't help myself. The tank

was leaking—that is the reason I had to stop carrying bunker oil." Appellant testified further that his ship was a "tanker" carrying a full crew.

There is nothing in the testimony that tends to show that appellant had ordered oil pumped from the bilge. The fact that he advised the witness Thacker that he intended to give orders to pump out the after ballast tank, coupled with the further fact that Thacker left the vessel to prepare for receiving the contents of said tank, would seem to negative the idea that appellant had given or intended to give orders for releasing the oil contained in the bilge. As already stated, immediately upon being notified that oil was being pumped from the bilge, appellant directed that the engineer be instructed to cease his operations. Further, it is observed that the testimony fails to show that appellant had given any general instructions under which the engineer was acting at the time the oil was released.

Obviously, the State relied entirely upon circumstantial evidence, and in our opinion the circumstances fail to exclude every other reasonable hypothesis except that of appellant's guilt. Hence we are constrained to hold the evidence insufficient. See Bell v. State, 99 S. W. (2d) 940.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.